**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| PAIGE LEE, BUSINESS MOVES CONSULTING, INC., BRANDMIXER, INC., AND CURTIS BORDENAVE | CIVIL ACTION |
| Plaintiff, | NO. 20-00839 |
| VERSUS | SECTION I |
| | JUDGE LANCE M. AFRICK |
| LEARFIELD COMMUNICATIONS, LLC A/K/A CLC LEARFIELD IMG COLLEGE, MYPLATES, INC., ANTHONY LAWRENCE COLLECTION, LLC, DEFRON FOBB AND THADDEUS REED D/B/A/ REED ENTERPRISE | MAG. JUDGE KAREN WELLS ROBY |
| Defendants. | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**</u>

Respectfully submitted,

KENT A. LAMBERT (22468)
BENJAMIN W. JANKE (31796)
CAMALLA KIMBROUGH GUYTON (33922)
**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana  70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000

**ATTORNEYS FOR DEFENDANT,
COLLEGIATE LICENSING COMPANY, LLC**

## **TABLE OF CONTENTS**

**Page**

Table of Contents     ...............................................................   i

Table of Authorities   ...........................................................   ii

Introductory Statement...........................................................   1

I.     Factual Background ........................................................   7

       A.     The Licencing Agreement between CLC and JSU .........................   7

       B.     JSU's Use of "Thee I Love" Dates Back to the 1940s.  ..............   8

       C.     Plaintiffs' Extensive History of Misappropriating
              Trademarks to Which They Have No Connection Whatsoever...............   9

       D.     Procedural History ...............................................   11

II.    This Court Must Have Subject Matter Jurisdiction.  ..................   11

III.   JSU is an Indispensable Party to this Dispute Under
       Federal Rule 19, and this Case Cannot Proceed Without JSU.  ...........   12

       A.     JSU's Joinder is Required under Rule 19(a).  ..................   13

       B.     JSU Cannot be Joined Because it is
              Entitled to Sovereign Immunity under the Eleventh Amendment.  ........   16

       C.     This Court Cannot Continue this Action
              "In Equity and Good Conscience" and it Must be Dismissed.  ..........   19

IV.    Conclusion     ..........................................................   23

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*A123 Sys., Inc. v. Hydro-Quebec,*
    626 F.3d 1213 (Fed. Cir. 2010) ................................................................... 14, 21

*Aceto Corp. v. TherapeuticsMD, Inc.*,
    953 F. Supp. 2d 1269 (S.D. Fla. 2013) .................................................... 14

*American Optical Co. v. Curtiss,*
    59 F.R.D. 644 (S.D.N.Y.1973) ................................................................ 15

*Arena v. Graybar Elec. Co.*,
    669 F.3d 214 (5th Cir. 2012) ................................................................... 12

*Barrera-Montenegro v. United States*,
    74 F.3d 657 (5th Cir. 1996) ................................................................ 11, 12

*Bd. of Regents of Univ. of Wisconsin Sys. v. Phoenix Software Intl, Inc.*,
    565 F. Supp. 2d 1007 (W.D. Wis. 2008) ................................................. 18

*Bethel v. Peace*,
    441 F.2d 295 (5th Cir. 1971) ................................................................. 12

*Boles v. Greeneville Housing Authority*,
    468 F.2d 476 (6th Cir. 1972) ................................................................. 12

*Caesar v. Louisiana Tech Univ.*,
    No. 3:19-CV-00915, 2019 WL 6125243 (W.D. La. Nov. 4, 2019)........................... 17

*Carpenter v. Mississippi Valley State Univ.*,
    807 F. Supp. 2d 570 (N.D. Miss. 2011)................................................... 16

*Clark v. Barnard*,
    108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883)........................................ 18

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999).............................................................................. 18

*Daigle v. Gulf State Utilities Co., Local Union Number 2286,et al.*,
    794 F.2d 974 (5th Cir. 1986) ................................................................. 16

*Delano Farms Co. v. California Table Grape Comm'n*,
    623 F. Supp. 2d 1144 (E.D. Cal. 2009) ................................................................. 22

*Den Norske Stats Oljeselskap As v. HeereMac Vof*,
    241 F.3d 420 (5th Cir. 2001) ................................................................................. 12

*Enable Okla. Intrastate Transmission, LLC v. A 25 Wide Foot Easement*,
    2016 WL 4402061 (W.D. Okla. Aug. 18, 2016) .................................................... 21

*Enter. Mgmt. Consultants, Inc. v. U.S. ex rel. Hodel*,
    883 F.2d 890 (10th Cir. 1989) .............................................................................. 21

*Gensetix, Inc. v. Baylor Coll. of Med.*,
    354 F. Supp. 3d 759 (S.D. Tex. 2018) ................................................................. 15

*Hanna v. LeBlanc*,
    716 F. App'x 265 (5th Cir. 2017) ......................................................................... 16

*Havana Club Holding, S.A. v. Galleon S.A.*,
    974 F. Supp. 302 (S.D.N.Y.1997) ........................................................................ 15

*Henry v. Link*,
    408 F. Supp. 1204 (D.N.D. 1976) ......................................................................... 17

*Hughes v. Johnson*,
    2016 WL 6124211 (E.D. La. Oct. 20, 2016) ................................................... 11, 12

*Jackson v. Connecticut Dep't of Pub. Health*,
    795 F. App'x 64 (2d Cir. 2020) ............................................................................ 18

*Judd v. Mississippi*,
    2017 WL 4478006 (N.D. Miss. Oct. 6, 2017) ...................................................... 19

*Lion Petroleum of Missouri, Inc. v. Millennium Super Stop, LLC*,
    467 F. Supp. 2d 953 (E.D. Mo. 2006) .................................................................. 14

*Lone Star Indus., Inc. v. Redwine*,
    757 F.2d 1544 (5th Cir.1985) ............................................................................... 20

*Marrero Enterprises of Palm Beach, Inc. v. Estefan Enterprises, Inc.*,
    2007 WL 4218990 (S.D. Fla. Nov. 29, 2007) ................................................. 13, 14

*Meredith v. Jackson State Univ.*,
    2010 WL 606402 (S.D. Miss. Feb. 17, 2010) ...................................................... 17

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) ........................................................................ 12

*Pulitzer-Polster v. Pulitzer*,
  784 F.2d 1305 (5th Cir. 1986) .............................................................. 12, 13

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008) ...................................................................................... 21

*Richardson v. Southern Univ.*,
  118 F.3d 450 (5th Cir. 1997) ........................................................................ 17

*Sabine Pipe Line, LLC v. A Permanent Easement
of 4.25 +/- Acres of Land in Orange Cty., Texas*,
  327 F.R.D. 131 (E.D. Tex. 2017) .................................................................. 21

*Shell Western E & P Inc. v. Dupont*,
  152 F.R.D. 82 (M.D. La. 1993) ............................................................... 12, 19

*St. James v. New Prague Area Cmty. Ctr.*,
  2006 WL 2069197 (D. Minn. July 26, 2006) .................................... 6, 14, 15

*Stotter v. Univ. of Tex. at San Antonio*,
  508 F.3d 812 (5th Cir. 2007) ........................................................................ 17

*Student Lifeline, Inc. v. Senate of New York*,
  2005 WL 8159826 (E.D.N.Y. Nov. 30, 2005) .............................................. 18

*Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*,
  778 F.3d 502 (5th Cir. 2015) ........................................................................ 12

*Tegic Commc'ns Corp. v.
Bd. of Regents of Univ. of Texas Sys.*,
  458 F.3d 1335 (Fed. Cir. 2006) .................................................................... 18

*Tennessee v. Lane*,
  541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) .............................. 18

*Whalen v. Carter*,
  954 F.2d 1087 (5th Cir. 1992) ...................................................................... 20

*Whiting v. Jackson State University*,
  616 F.2d 116 (5th Cir. 1980) ................................................................... 7, 17

*Wright v. Common Ground Health Clinic, Inc.*,
  2016 WL 4720011(E.D. La. Sept. 9, 2016) .................................................. 11

iv

**STATUTES**

15 U.S.C. §§ 1052(a), (c) ............................................................................... 4

15 U.S.C. §§ 1114(1) ..................................................................................... 6

15 USC § 1125 ........................................................................................... 2, 6

MISS. CODE ANN. § 11–46–5(4) ................................................................... 19

MISS. CODE ANN. § 37–125–1 ................................................................. 7, 17

MISS. CODE ANN. § 75-25-31 ......................................................................... 2

MISS. CODE ANN. § 75-25-9 ........................................................................... 2

**RULES**

FED. R. CIV. PROC. 19(a) ................................................................ 13, 15, 16, 20

FED. R. CIV. PROC. 19(b) ......................................................................... 20, 21

FED. R. CIV. PROC. 12(b)(1) ........................................................................ 11

FED. R. CIV. PROC. 12(b)(7) ........................................................................ 12

**OTHER AUTHORITIES**

7 Charles A. Wright, Arthur R. Miller & Mary K. Kane,
    FEDERAL PRACTICE AND PROCEDURE, CIVIL § 1614 (3d ed. 2001) ......................................... 14

**MAY IT PLEASE THE COURT:**

Defendant, Collegiate Licensing Company, LLC ("CLC") (incorrectly identified in the Complaint [R. Doc. No. 1] as Learfield Communications, LLC), respectfully submits this memorandum in support of its Motion to Dismiss, filed pursuant to Rule 12(b)(1) and Rule 12(b)(7), to dismiss all claims urged against it in the captioned action by plaintiffs Paige Lee; Business Moves Consulting, Inc.; Brandmixer, Inc.; and Curtis Bordenave (collectively, the "Bordenave Plaintiffs").

### INTRODUCTORY STATEMENT

This case is about who owns the trademark rights to "Thee I Love."  Since the 1940's, "Thee I Love" has been the alma mater for Jackson State University in Mississippi.[1]  The words feature prominently in JSU's fight song, "Jackson Fair," which is performed by JSU's band, "The Sonic Boom of the South," after commencement, convocations, and sporting events, such as football and basketball games.



---

[1] *See* Declaration of Kamesha Hill, dated 6/8/20, ¶ 7 ("JSU Decl."), attached as Exhibit "1."

[2] *See id.* at ¶ 8, and JSU's trademark application for "Thee I Love," U.S. Ser. No. 88/728,596, Specimen,

JSU uses the "Thee I Love" trademark extensively on all sorts of merchandise and apparel.[3]  It is even featured on the official Mississippi vanity license plate for JSU:

 [4]

Through its use of the "Thee I Love" trademark since the 1940s, JSU has obtained both "common law" trademark rights under the Lanham Act and Mississippi law[5] and registered trademark rights under Mississippi law.[6]

JSU contracted with CLC to assist JSU in granting licenses for the use of JSU's trademarks and other indicia on merchandise, including "Thee I Love."[7]  CLC specializes in assisting colleges of various sizes across the country in managing their product licensing program.[8]

---

filed 12/16/19, attached as Tab "A" thereto.

[3] *Id.* at ¶ 12.

[4] *Id.* at ¶ 9.

[5] *See* 15 USC § 1125 (the Lanham Act) and MISS. CODE ANN. § 75-25-31 ("Nothing herein shall adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law.").

[6] *See* Ex. "1," JSU Decl., at ¶ 11.  JSU has two trademarks for THEE I LOVE registered with the State of Mississippi, which entitle it to trademark protection throughout the State.  *Id.* at ¶ 11, attaching MS Reg. No. 15767 and 15580 (Attached as Tab "B" thereto).  *See* MISS. CODE ANN. § 75-25-9 (stating in part: "Any certificate of registration issued by the secretary under the provisions hereof or a copy thereof duly certified by the secretary shall be admissible in evidence as competent and sufficient proof of the registration of such mark in any actions or judicial proceedings in any court of this state.").

[7] Ex. "1," JSU Decl., at ¶ 13.  *See also* Declaration of Cory Moss, dated 6/8/20, ¶ 6 ("CLC Decl."), attached as Exhibit "2."

[8] Ex. "2," CLC Decl., at ¶ 5.

The Bordenave Plaintiffs had no connection whatsoever to JSU or the "Thee I Love" trademark[9] until plaintiff Curtis Bordenave saw an opportunity to mine the institutional loyalty of JSU students, parents, and alumni by exploiting the absence of a federal trademark registration by JSU for "Thee I Love" to register forms of "Thee I Love" with the United States Patent and Trademark Office (the "USPTO") in the name of his companies, Business Moves Consulting, Inc. and Brandmixer, Inc. (also plaintiffs here).[10]

Curtis Bordenave's assault upon JSU's trademark is but the latest example of a long-running pattern of abusive conduct, whereby Mr. Bordenave seeks to register trademarks to which he has no prior connection in the hope of converting or holding for ransom goodwill created through the efforts, traditions, and creativity of others.   On many occasions, Mr. Bordenave's profiteering has been caught and overcome, including before this Court.   Twenty years ago, Judge Barbier (with then-Magistrate Judge Africk) presided over a case in which Mr. Bordenave had attempted to apply for trademark registrations connected to the "Jazzland" name and form several companies using that nomenclature despite having no connection whatsoever to the Jazzland theme park.[11]   The Court entered an Order enjoining Mr. Bordenave from using the JAZZLAND trademark.[12]

---

[9] *See* Ex. "1," JSU Decl., at ¶ 14.

[10] *See* Trademark Application for THEEILOVE! (& design), U.S. Ser. No. 87/670,210, U.S. Reg. No. 5,496,751, Registered on 6/19/18 and owned by Business Moves Consulting, and THEE I LOVE, U.S. Ser. No. 88/707,020 (not registered), which is jointly owned by plaintiff, Business Moves Consulting, and plaintiff, Brandmixer, attached hereto as Exhibit "3" *in globo.*   Plaintiffs claim that Paige Lee and Brandmixer are also licensees of the trademarks.

[11] *Jazzland, Inc. v. Curtis Bordenave, Jr. et al.*, No. 98-1356 (E.D. La.).

[12] *See* Judgment dated 1/27/2000 [R. Doc. No. 93], *Jazzland, Inc. v. Curtis Bordenave, Jr. et al.*, No. 98-1356 (E.D. La.), attached hereto as Exhibit "4."

3

Just one year later, Judge Lemmon entered an Order enjoining Mr. Bordenave from using several trademarks belonging to Cash Money Records,[13] ordered Mr. Bordenave to assign all of the trademarks he obtained in his name that belonged to Cash Money Records, and ordered him "to account to [Cash Money Records] for all gains, profits, and advantages resulting or derived from [his] wrongful acts"[14]  In that case, Mr. Bordenave admitted to having applied for <u>more than three hundred</u> trademarks.[15]

More recently, Mr. Bordenave has focused on applying for trademarks for the names of celebrities' infant children, forcing their parents into paparazzi-friendly litigation simply to defend their children's rights.  In one notable example from 2017, Mr. Bordenave filed several trademark applications with a form of the name ASHAD, the name of the then-infant son of world-famous celebrity DJ Khaled.[16]  Mr. Bordenave was successful (or lucky) in obtaining one trademark registration for ASHAD (ASHAD COUTURE), but the USPTO rightly issued Office Actions refusing registration of Defendants' remaining ASAHD– and A.S.A.H.D.–formative trademark applications on the grounds that they falsely imply a connection with Asahd Tuck Khaled and seek registration of his name without permission in violation of Sections 2(a) and 2(c) of the Lanham Act, 15 U.S.C. §§ 1052(a), (c).  In one such Office Action, the USPTO

---

[13] Founded by brothers Bryan "Birdman" Williams and Ronald "Slim" Williams, Cash Money Records (or "Ca$h Money Records") has signed such artists as Lil Wayne, Drake, and Nicki Minaj, and is considered one of the most successful record companies in hip-hop history.

[14] *See* Judgment, dated 4/5/2001, [R. Doc. No. 41], in *Cash Money Records, Inc. v. Millennium 2000, Inc., Curtis P. Bordenave, Jr. et al.*, No. 00-2024 (E.D. La.), attached hereto as Exhibit "5."  The Judgment was entered against Gloria Bordenave, Curtis Bordenave, and other defendants *in solido.*

[15] *See* Cash Money Records' Motion for Summary Judgment, dated 3/20/2001, [R. Doc. No. 32], at Ex. 1, p. 81, in USDC E.D. La. 98-1356, attached hereto as Exhibit "6."

[16] *See* Amended Complaint, dated 5/2/2019, [R. Doc. No. 58], in *Khaled M. Khaled and ATK Entertainment, Inc. v. Curtis Bordenave, and Business Moves Consulting Inc. DBA Business Moves*, USDC S.D.N.Y. No. 2018-cv-05187, at pp. 13-14.

explained that "Asahd Khaled is so well known that the public would reasonably assume a connection between the named person and the recited goods."[17]  Still, DJ Khaled was compelled to sue Mr. Bordenave and to seek cancellation of the trademark registration Mr. Bordenave obtained on false grounds.[18]  His Complaint identifies a litany of other trademark applications filed by Curtis Bordenave and Business Moves for names with which they have no connection whatsoever, for the purposes of either unfairly capitalizing on the goodwill of others or to hold such trademarks as ransom through their predatory conduct,[19] including other infant children of famous celebrities.[20]  Mr. Bordenave has also aggressively sought to exploit other, more dubious dark corners of pop culture – even to the extreme of attempting to obtain a trademark registration for a racial slur.[21]

Mr. Bordenave's unfettered greed – and suspect tactics – are on full display in the case at bar.  In the foregoing court cases, Mr. Bordenave and Business Moves paired off against the rightful trademark owners.  And, in each of those cases, Mr. Bordenave and Business Moves lost.  Proving old dogs can learn new tricks, this time around the Bordenave Plaintiffs are trying

---

[17] *Id.*

[18] *Id.*   While DJ Khalid sought cancellation of Trademark Registration No. 5,623,582, it has been subsequently assigned to Mr. Khalid's company, ATK Entertainment, Inc.  *See* Trademark Registration No. 5,623,582, available on TESS at tmsearch.uspto.gov.

[19] *See* Amended Complaint, dated 5/2/2019, [R. Doc. No. 58], in *Khaled M. Khaled and ATK Entertainment, Inc. v. Curtis Bordenave, and Business Moves Consulting Inc. DBA Business Moves*, USDC S.D.N.Y. No. 2018-cv-05187, at p. 11.

[20] Mr. Bordenave and Business Moves are currently involved in litigation with Kylie Jenner after Bordenave filed a trademark application the name of Kylie's daughter Stormi (specifically, "Stormi Couture").  Both sides filed claims against each other.  *See Business Moves Consulting, Inc. v. Kylie Jenner, Inc. v. Business Moves Consulting Inc.*, TTAB Proceeding No. 91254984, available on TTABVUE at ttabvue.uspto.gov. *See also* https://www.msn.com/en-us/news/other/kylie-jenner-in-trademark-battle-over-daughters-name/ar-BB13nDNG.

[21] *See* Mr. Bordenave's two trademark applications, at U.S. Ser. Nos. 87/496,567 and 87/495,358, available at the USPTO Trademark Electronic Search System (TESS), at tmsearch.uspto.gov.

a different tack: instead of asserting trademark rights directly against JSU, the real owner of the "Thee I Love" trademark, the Bordenave Plaintiffs have conspicuously <u>omitted</u> JSU from their suit entirely.[22]   Instead, the Bordenave Plaintiffs seek remedies only against CLC and certain licensees who contracted with JSU (through CLC) for use of the "Thee I Love" trademark.

Plaintiffs seek injunctive relief and damages from CLC and other defendants on grounds that defendants have "infring[ed] on and violat[ed] Plaintiffs' rights in and to the name and registered trademark(s) for "THEEILOVE" by, *inter alia*, advertising, marketing, selling, and/or distributing merchandise improperly bearing the name and mark.   [R. Doc. No. 1, pp. 1-2]. Plaintiffs assert claims of (1) infringement of a federally registered trademark and unfair competition in violation of Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a); (2) common and civil law unfair trade practices, unfair competition, and trademark infringement arising under the laws of Louisiana, Texas, Mississippi, Tennessee, and Georgia; and (3) false advertising arising under the laws of the aforementioned states.

This Court should dismiss Plaintiffs' claims against CLC pursuant to Rules 12(b)(1) and (b)(7).   As explained more fully below, pursuant to the licensing agreement between JSU and CLC, CLC merely grants **licenses** to licensees to use JSU's trademarks on certain merchandise as agent and license administrator for JSU.   CLC's principal, JSU, is the **actual and rightful** owner of the "Thee I Love" trademark.   As the owner of the trademarks at issue, JSU is an indispensable party concerning all claims related to these trademarks.   *See St. James v. New Prague Area Cmty. Ctr.*, No. CIV.06-1472JNE-JJG, 2006 WL 2069197, at *2 (D. Minn. July 26,

---

[22] Presumably, the Bordenave Plaintiffs are aware that they cannot properly join JSU as a defendant in this lawsuit, for the reasons set forth herein.

2006) (nothing that it is "well established, in suits for . . . trademark infringement, that the owner of the . . . trademark is subject to compulsory joinder") (citations omitted).

JSU, however, cannot be joined as a defendant to this action, because it is an arm of the State of Mississippi that enjoys sovereign immunity under the Eleventh Amendment of the United States Constitution.  *See Whiting v. Jackson State University*, 616 F.2d 116, 127 n.8 (5th Cir. 1980) (stating that "JSU is an agency of the state because it is a state-created political body, Miss. Code Ann. § 37–125–1 (Cum. Supp. 1979), and receives state funding.").  Because JSU is an indispensable party whose joinder would divest this Court of subject matter jurisdiction, Plaintiffs' claims must be dismissed in their entirety.

## I.   **Factual Background**

### A.   *The Licencing Agreement between CLC and JSU*

JSU is a public four-year university located in Jackson, Mississippi.[23]  It is a state-created political body funded by the state (and taxpayers) of Mississippi.[24]  In June of 2007, JSU entered into an agency agreement ("Agreement") with CLC's predecessor-in-interest, Strategic Marketing Affiliates Inc. ("SMA"), which Agreement has been extended through June 30, 2020.[25]   As outlined in the Agreement, JSU owns certain Indicia, defined as "designs, trademarks, service marks, logographics, and symbols which have come to be associated with the University."[26]  Under the Agreement, JSU granted CLC the exclusive right to act as an agent for

---

[23] *See* Ex. "1," JSU Decl., at ¶ 5.

[24] *Id.* at ¶ 6.

[25] *See* Agency Agreement, Amendment to the Agreement By and Between Jackson State University and Strategic Marketing Affiliates, and Second Amendment to Agency Agreement, attached as *in globo* Tab "C" to Ex. "1," JSU Decl.

[26] *See* Agency Agreement p. 1, attached as *in globo* Exhibit "C" to Ex. "1," JSU Decl.

7

JSU in the granting of licenses to licensees to use JSU's Indicia on merchandise.[27]  Importantly, CLC was granted less than all substantial rights in the Indicia, as the Agreement expressly provides that "[n]othing herein shall give [CLC] any right, title, or interest in any Trademark of JSU except the limited interest specifically stated in this Agreement, and all use by any licensee of any of the Trademark [sic] shall inure to the benefit of JSU."[28]

### B.   JSU's Use of "Thee I Love" Dates Back to the 1940s.

As noted above, since the 1940s, "Thee I Love" has been the alma mater for Jackson State University in Mississippi.[29]  The words feature prominently in JSU's fight song, "Jackson Fair," which is performed by JSU's band, "The Sonic Boom of the South," after commencement, convocations, and sporting events, such as football and basketball games.[30]  Jackson State University has filed a number of trademark applications for one or more formative versions of THEE I LOVE, including THEE I LOVE, Mississippi Trademark Registration No. 15767, registered 9/22/2015; Thee I Love, Mississippi Registration No. 15580, registered 11/14/2019; HAIL HAIL TO THEE, U.S. Reg. No. 6,050,006; THEE I LOVE! (and design), U.S. Ser. No. 88/730,067 (application pending), and THEE I LOVE, U.S. Ser. No. 88/728,596 (application pending).[31]  The latter two applications have been initially refused by the USPTO on the basis of the prior pending application for THEE I LOVE, U.S. Ser. No. 88/707,020 (application pending), by plaintiff Business Moves, and the prior registration for THEEILOVE! (& design), U.S. Reg.

---

[27] *Id.*

[28] *Id.* at p. 5.  Although "Trademark" is not defined in the Agreement, the term "Indicia" includes trademark and service marks.  *See id.* at p. 1.

[29] *See* Ex. "1," JSU Decl., at ¶ 7.

[30] *Id.* at ¶ 8.

[31] *Id.* at ¶¶ 10 & 11.

No. 5,496,751, by plaintiffs Business Moves Consulting and Brandmixer.[32]  JSU is in the process

of petitioning to cancel plaintiffs' U.S. Registration for THEEILOVE! (& design), U.S. Reg. No.

5,496,751.[33]  In due course, JSU plans to oppose the registration of the pending application for

THEE I LOVE, U.S. Ser. No. 88/707,020 if and when a notice of allowance is issued and defend

its various pending applications for THEE I LOVE noted above.[34]

> C.     *Plaintiffs' Extensive History of Misappropriating*
> *Trademarks to Which They Have No Connection Whatsoever.*

Plaintiffs Curtis Bordenave and Business Moves Consulting, Inc., in particular, have long

standing reputations of being trademark pirates whose main business is appropriating and

exploiting well-known brands and applying for trademark registrations that they have no

connection to whatsoever, as is the case with "THEEILOVE."  This Court is no stranger to those

plaintiffs.  For example, in *Jazzland, Inc. v. Curtis Bordenave Jr., et al.*, Civil Action No. 98-

1356, this Court (Barbier, J.) entered a judgment permanently enjoining and restraining Mr.

Bordenave from:

> (i)     Manufacturing, distributing, offering for sale, advertising, or selling any
> merchandise bearing JAZZLAND Marks or any confusingly similar
> designation or design,
>
> (ii)    Using the JAZZLAND Marks, or any other confusingly similar
> designations, designs or indicia in any business or enterprise whatsoever,
>
> (iii)   Aiding or abetting in any way or inducing or contributing to the
> infringement of the JAZZLAND Marks,
>
> (iv)    Otherwise infringing Jazzland's rights and competing unfairly with
> Jazzland, and

---

[32] *Id.* at ¶¶ 15.

[33] *Id.* at ¶ 16.

[34] *Id.* at ¶ 17.

> (v)     Opposing, attempting to cancel, or in any way interfering with any application or registration of Jazzland, Inc., involving a Jazzland-related mark or name with the United States Patent and Trademark Office or the Louisiana Secretary of State.[35]

Similarly, in *Cash Money Records, Inc. v. Millennium 2000, Inc., Curtis P. Bordenave, Jr., Wendy Lyons, Gloria Bordenave and Misty M. Miller*, Civil Action No. 00-2024, this Court (Lemmon, J.) granted Cash Money Records, Inc. ("CMR's") motion for summary judgment and, *inter alia*, entered a declaratory judgment recognizing certain trademarks as the "exclusive property of CMR;" permanently enjoined defendants from using and/or infringing such trademarks; and ordered defendants to execute and to deliver to CMR all of the documents necessary to transfer to CMR all of the federal and/or state trademark registrations defendants obtained for CMR's trademarks, as well as all pending federal and/or state trademark applications defendants filed for CMR's trademarks.[36]   Plaintiffs' misconduct extends well beyond this district.[37]

---

[35] *See* Ex. 4," Judgment, dated 1/27/2000, [R. Doc. No. 93], in *Jazzland, Inc. v. Curtis Bordenave, Jr. et al.*, USDC E.D. La. 98-1356.  Judge Africk (then Magistrate Judge Africk) was the Magistrate Judge assigned to this case.

[36] *See* Ex. "5," Judgment, dated 4/5/2001, [R. Doc. No. 41], in *Cash Money Records, Inc. v. Millennium 2000, Inc., Curtis P. Bordenave, Jr. et al.*, USDC E.D. La. 00-2024.

[37] *See e.g.*, *Khaled M. Khaled et al. v. Curtis Bordenave and Business Moves Consulting, Inc. dba Business Moves*, Civil Action No. 18-5187, filed in the United States District Court for the Southern District of New York.  In that case, plaintiffs sought to halt defendants attempt "to usurp and trade on the names and trademarks of world-famous entertainer Khaled M. Khaled, known popularly as "DJ Khaled," and his eighteen-month-old son, Asahd Tuck Khaled."  *See* Amended Complaint, dated 5/2/2019, [R. Doc. No. 58], in *Khaled M. Khaled and ATK Entertainment, Inc. v. Curtis Bordenave, and Business Moves Consulting Inc. DBA Business Moves*, USDC S.D.N.Y. No. 2018-cv-05187, at pp. 1-2.  Plaintiffs alleged that defendants' main business "appears to be appropriating and exploiting the renown and goodwill associated with well-known brands and personalities," noting that in addition to applying to register certain trademarks associated with DJ Khaled and his son, defendants also applied to register certain trademarks associated with Cardi B (a well-known rapper and television personality); Stormi Couture (referencing Stormi Webster, daughter of television personality Kylie Jenner); Cynthia Bailey Eyewear (referencing Cynthia Bailey, a model and television personality); and Capital City Go (an American professional basketball team in the NBA G League and an affiliate of the Washington Wizards of the National Basketball Association), among others.  *See* Amended Complaint, at ¶ 39.  The lawsuit was ultimately dismissed after the parties reached an undisclosed settlement.

10

D.    *Procedural History*

On March 10, 2020, Plaintiffs initiated this trademark infringement action naming various entities as defendants, including CLC (incorrectly identified in the Complaint as Learfield Communications, LLC a/k/a/ CLC Learfiled IMG College); MyPlates, Inc.; Anthony Lawrence Collection, LLC; Thaddeus Reed d/b/a/ Reed Enterprise; and Defron Fobb.[38]

Noticbly absent from the suit is JSU, which is indispensable given that it is the actual and rightful owner of the"Thee I Love" trademark the Bordenave Plaintiffs claim to own.  At the same time, JSU cannot be named as a defendant by the Bordenave Plaintiffs because, as an instrumentality of the State of Mississippi, JSU enjoys sovereign immunity from federal trademark infrngement claims.  Because JSU cannot be joined, this Court lacks subject matter jurisdiction over this lawsuit, requiring the dismissal of the Bordenave Plaintiffs' claims.

**II.    This Court Must Have Subject Matter Jurisdiction.**

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of the plaintiff's claim.  *Hughes v. Johnson*, No. CV 15-7165, 2016 WL 6124211, at *3 (E.D. La. Oct. 20, 2016).  Motions submitted under Rule 12(b)(1) allow a party to challenge the court's subject matter jurisdiction based upon the allegations on the face of the complaint.  *Id.* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)); *Wright v. Common Ground Health Clinic, Inc.*, 2016 WL 4720011, *2 (E.D. La. Sept. 9, 2016) (Africk, J.)

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts;

---

[38] As of this date, the only other defendant who has made an appearance in this matter is Thaddeus Reed d/b/a/ Reed Enterprise, who has been granted an extension through June 22, 2020 to file repsonsive pleadings.

**or** (3) the complaint supplemented by undisputed facts ***and by the court's resolution of disputed facts***. *Hughes*, 2016 WL 6124211, at *3 (citing *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *Barrera-Montenegro*, 74 F.3d at 659)).  Regardless, it is the plaintiff that bears the burden of demonstrating that subject matter jurisdiction exists.  *Id.* (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).

When examining a factual challenge to subject matter jurisdiction that does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citing *Arena v. Graybar Elec. Co*., 669 F.3d 214, 223 (5th Cir. 2012).  Accordingly, the court may consider matters outside the pleadings.  *Id.* (citing *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015)).

### III.    JSU is an Indispensable Party to this Dispute Under Federal Rule 19, and this Case Cannot Proceed Without JSU.

Rule 12(b)(7) of the Federal Rules of Civil Procedure provides for the dismissal of claims when a plaintiff fails to join an indispensable party to the lawsuit pursuant to Rule 19.  Resolving whether a person is an indispensable party is a practical inquiry, with an emphasis on pragmatism, whereby the various harms that the parties and the absentees might suffer are considered.  *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986); *see also Shell Western E & P Inc. v. Dupont*, 152 F.R.D. 82, 85 (M.D. La. 1993) (citing *Bethel v. Peace*, 441 F.2d 295, 296 (5th Cir. 1971)).

The initial burden of proof for the party advocating joinder only requires a showing of "the possibility that an unjoined party is arguably indispensable,"[39] and when "after an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Pulitzer*, 784 F.2d at 1309. Rule 19 then provides for a two-step analysis to determine whether to dismiss an action for failure to join an absent party. *Id.* First, the court must decide, under Rule 19(a), whether a party should be joined. *Id.* Second, "if joinder is called for, then Rule 19(b) guides the court in deciding whether the suit should be dismissed if that person cannot be joined." *Id.*

Here, JSU is a party who must be joined if feasible under Rule 19(a), but JSU's joinder would divest this Court of subject matter jurisdiction. Plaintiffs' Complaint cannot proceed without JSU, so Plaintiffs' Complaint should be dismissed under Rule 19(b).

### A.    *JSU's Joinder is Required under Rule 19(a).*

This action cannot proceed without JSU—an indispensable party to Plaintiffs' claim to ownership of "THEEILOVE." Federal Rule 19(a)(1) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> A. in that person's absence, the court cannot accord complete relief among existing parties; or
>
> B. that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > i. as a practical matter impair or impede the person's ability to protect the interest; or

---

[39] *Boles v. Greeneville Housing Authority*, 468 F.2d 476, 478 (6th Cir. 1972); *see also Pulitzer*, 874 F.2d at 1309 (citing *Boles*).

      ii.  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

F<small>ED</small>. R. C<small>IV</small>. P<small>ROC</small>. 19(a)(1).

It is well-settled that the owner of a trademark **<u>must</u>** be made a party to an infringement action involving the owner's mark.  *See Marrero Enterprises of Palm Beach, Inc. v. Estefan Enterprises, Inc.*, No. 06-81036-CIV, 2007 WL 4218990, at *2 (S.D. Fla. Nov. 29, 2007); *St. James,* 2006 WL 2069197 at *2 (nothing that it is "well established, in suits for . . . trademark infringement, that the owner of the . . . trademark is subject to compulsory joinder) (citing 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure, Civil* § 1614 (3d ed. 2001)); *Lion Petroleum of Missouri, Inc. v. Millennium Super Stop, LLC,* 467 F. Supp. 2d 953, 956 (E.D. Mo. 2006) ("[g]enerally, in suits for trademark infringement, the owner of the . . . trademark is a necessary party.").[40]  This is particularly true in situations where a licensee holding less than all substantial rights in a trademark is a party to an infringement action concerning the owner's trademark.  *See Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1282 (S.D. Fla. 2013) (stating that "unless [a licensee] is an exclusive licensee with all substantial rights in the trademark, all entities with an independent right to enforce the [trademark] are indispensable or necessary parties to this infringement suit.").  Pursuant to Rule 19, joinder of the trademark owner is required to ensure against the loss or abridgment of the owner's rights in the owner's absence, as well ensure against the risk of multiple or inconsistent obligations or repetitive litigation arising from the same facts and circumstances (as

---

[40] Similar conclusions have been reached by Courts in patent infringement cases.  *See e.g., A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1219 (Fed. Cir. 2010) ("In summary, we hold that because HQ had acquired less than all substantial rights in the patents in suit, UT is a necessary party to A123's declaratory judgment action.") (citations omitted).

among different groups of licensees or agents). *Marrero*, 2007 WL 4218990, at *2; *St. James*, 2006 WL 2069197 at *2 (stating that "[w]hen examining whether the interests of a party require that party to be joined, the critical inquiry is whether the party will lose the opportunity to vindicate those rights in a future proceeding.")[41]  The same analysis applies where ownership is at issue. *St. James*, 2006 WL 2069197, at *2 (citing *Havana Club Holding, S.A. v. Galleon S.A.,* 974 F. Supp. 302, 311 (S.D.N.Y.1997); *American Optical Co. v. Curtiss,* 59 F.R.D. 644, 647 (S.D.N.Y.1973).

Here, under Rule 19(a)(1)(A), this Court cannot accord complete relief among the existing parties without JSU.  Plaintiffs allege that CLC has engaged in conduct that infringes upon Plaintiffs' federally registered trademark and established rights to "THEEILOVE."  CLC, however, simply acts as an agent for JSU in the granting of licenses to licensees to use JSU's Indicia on merchandise.  JSU owns the "Thee I Love" trademark, and CLC does not have any right, title, or interest in any trademark of JSU except the limited interest specifically stated in the Agreement between the parties.[42]  CLC, therefore, possesses less than all substantial rights in the trademarks in question.  Because JSU is indispensable to adjudication of the Bordenave Plaintiffs' claim to ownership of "THEEILOVE," JSU is a party whose joinder is compulsory.

The same result should follow under Rule 19(a)(1)(B) as well.  JSU "claims an interest relating to" "THEEILOVE."  In the event this case were to proceed without JSU, JSU would risk losing rights connected to its trademarks (and worse, sitting on the sidelines while the Plaintiffs

---

[41] *See also Gensetix, Inc. v. Baylor Coll. of Med.*, 354 F. Supp. 3d 759, 772 (S.D. Tex. 2018) ("A licensor with substantial rights must be joined to avoid (1) multiple lawsuits on the same patent and (2) the licensor's loss of these rights in an action to which they were not a party.") (citation omitted).

[42] *See* Ex. "1-C," Agency Agreement, at p. 5.

seek to profit on JSU's goodwill) without the opportunity to defend its rights.  Thus, disposing of Plaintiffs' Complaint in JSU's absence may, under Rule 19(a)(B)(i), "impair or impede [JSU's] ability to protect [its] interest" in the trademark.  Moreover, under Rule 19(a)(B)(ii), without JSU, CLC could be subject to inconsistent obligations by reason of JSU's interests in the trademarks.  Clearly, JSU is a party whose joinder is required under both Rule 19(a)(1)(A) and Rule 19(a)(1)(B).

> **B.**    *JSU Cannot be Joined Because it is*
> *Entitled to Sovereign Immunity under the Eleventh Amendment.*

Although JSU *must* be joined to this suit as a necessary and indispensable party, JSU *cannot* be joined since JSU enjoys sovereign immunity under the Eleventh Amendment.  A court does not have subject matter jurisdiction over a party that is immune under the Eleventh Amendment.  *See e.g.*, *Hanna v. LeBlanc*, 716 F. App'x 265, 268 (5th Cir. 2017) (holding that Eleventh Amendment immunity deprives a court of subject matter jurisdiction).  The addition of JSU to this lawsuit, therefore, would divest this Court of subject matter jurisdiction.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This immunity is far reaching in that "[i]t bars all suits, whether for injunctive, declaratory, or monetary relief, against the state and its departments . . . by citizens of another state, foreigners, or its own citizens."  *Carpenter v. Mississippi Valley State Univ.*, 807 F. Supp. 2d 570, 580 (N.D. Miss. 2011) (citations omitted).  "A suit against a state agency 'is a suit against the state' when that agency is an arm of the state."  *Id.* (citing *Daigle v. Gulf State Utilities Co., Local Union Number 2286, et al.*, 794 F.2d 974, 980 (5th Cir. 1986).

16

The Fifth Circuit has held that "JSU is an agency of the state because it is a state-created political body, Miss. Code Ann. § 37–125–1 (Cum. Supp. 1979),[43] and receives state funding." *Whiting*, 616 F.2d at 127 n. 8; (citing *Henry v. Link,* 408 F. Supp. 1204, 1207 (D.N.D. 1976), *mod. on other grounds,* 417 F. Supp. 360 (D.N.D.1976))*; see also Meredith v. Jackson State Univ.,* 2010 WL 606402, at *2 (S.D. Miss. Feb. 17, 2010) (noting that "[i]n both published and unpublished decisions, th[e] Court has consistently found [Jackson State University] to be an arm of the state") (citations omitted).   In fact, numerous federal courts have consistently held that publicly funded state universities like JSU are arms of the state.   *See Stotter v. Univ. of Tex. at San Antonio,*508 F.3d 812, 821 (5th Cir.2007) ("This court has also recognized that state universities *as arms of the state* are not 'persons' under § 1983") (citations omitted) (emphasis added); *Richardson v. Southern Univ.,* 118 F.3d 450, 454–56 (5th Cir. 1997) ("Southern [University] and its Board are considered an agency of the State of Louisiana."); *Caesar v. Louisiana Tech Univ.*, No. 3:19-CV-00915, 2019 WL 6125243, at *2 (W.D. La. Nov. 4, 2019) (noting that the Fifth Circuit "has consistently held that the University of Louisiana System Board and the institutions under its control are 'arms' of the state entitled to sovereign immunity.") (citations omitted).   Thus, as an arm of the State of Mississippi, JSU is entitled to sovereign immunity under the Eleventh Amendment.

---

[43] MISS. CODE. Ann. § 37-125-1 states as follows:

A body politic and corporate is hereby created by the name of the "Jackson State College" to have perpetual succession, with power to contract and be contracted with, to receive by any legal method of transfer or conveyance, property of any description, to have, hold and employ the same, to make and use a corporate seal, with power to break or change the same, and to adopt bylaws, rules, and regulations for the government of its members, official agents, and employees. However, the name of said "Jackson State College" is hereafter changed to "Jackson State University," without interference with the rights, powers and prerogatives of said college which continue in all respects. Whenever the name "Jackson State College" appears, the same is construed to denote "Jackson State University."

JSU's sovereign immunity has not been limited or waived in any manner.  A state's sovereign immunity can be limited in only two circumstances, neither of which are applicable in the instant matter: "(1) when Congress abrogates the state's immunity pursuant to a valid exercise of power, *Tennessee v. Lane,* 541 U.S. 509, 533–34, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004); or (2) when the state makes an express and voluntary waiver of the immunity." *Clark v. Barnard,* 108 U.S. 436, 447–448, 2 S.Ct. 878, 27 L.Ed. 780 (1883).  *Bd. of Regents of Univ. of Wisconsin Sys. v. Phoenix Software Intl, Inc*., 565 F. Supp. 2d 1007, 1010 (W.D. Wis. 2008).

Here, Congress has not validly abrogated the states' immunity from suit under the Lanham Act, and therefore, sovereign immunity bars trademark claims against JSU.  *See e.g.*, *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1340 (Fed. Cir. 2006) ("The Court has confirmed the applicability of Eleventh Amendment immunity to suits pertaining to violations of federal . . . trademark laws" (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 673 (1999), noting that the Trademark Remedy Clarification Act of 1992 did not abrogate the State of Florida's Eleventh Amendment immunity); *Bd. of Regents of Univ. of Wisconsin Sys*., 565 F. Supp. 2d 1010-13 (finding that "[a]s a branch of the state, plaintiff enjoys sovereign immunity from trademark infringement suits"); *Jackson v. Connecticut Dep't of Pub. Health*, 795 F. App'x 64, 65 (2d Cir. 2020) (holding that the Lanham Act "did not abrogate the State's immunity"); *Student Lifeline, Inc. v. Senate of New York*, No. 04-CV-5484(JS)(JO), 2005 WL 8159826, at *3 (E.D.N.Y. Nov. 30, 2005) (holding that because Congress did not abrogate sovereign immunity validly under the Copyright and Lanham Acts, defendant could properly invoke Eleventh Amendment immunity against plaintiff's claims).

Furthermore, Mississippi jurisprudence makes clears that "while the state of Mississippi has waived some aspects of its sovereign immunity in the Mississippi Tort Claims Act, that law specifically provides that '[n]othing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.'" *Judd v. Mississippi*, No. 4:16-CV-119-DMB-JMV, 2017 WL 4478006, at *3 (N.D. Miss. Oct. 6, 2017) (citing Miss. Code Ann. § 11–46–5(4)).

The Lanham Act does not abrogate the states' sovereign immunity, and the state of Mississippi has not waived its sovereign immunity.  As a result, had Plaintiffs made a trademark infringement claim against JSU, this court would not have jurisdiction to hear such claims because as an arm of the state of Mississippi, such claims would have been barred by the Eleventh Amendment

> C.      **This Court Cannot Continue this Action**
> **"In Equity and Good Conscience" and it Must be Dismissed.**

Plaintiffs cannot circumvent this jurisdictional quandary merely by omitting JSU from the lawsuit.  Quite simply, the Court cannot proceed without JSU "in equity and good conscience" and this case must be dismissed.  Although Rule 19(b) allows some limited ways for a lawsuit to proceed despite the inability to join an indispensable party, none of these exceptions are applicable here.  *Shell Western E & P Inc.*, 152 F.R.D. at 86.  Federal Rule 19(b) provides:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:
>
> 1.  the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

2. the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;

3. whether a judgment rendered in the person's absence would be adequate; and

4. whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. PROC. 19(b).

These four factors under Rule 19(b) are guides to the overarching "equity and good conscience" determination. *Whalen v. Carter*, 954 F.2d 1087, 1096 (5th Cir. 1992). "Pragmatic and equitable considerations control the Rule 19(b) analysis." *Lone Star Indus., Inc. v. Redwine*, 757 F.2d 1544, 1552 (5th Cir.1985). Here, equity and good conscience mandate that this action be dismissed.

First, a judgment rendered without JSU's presence would be prejudicial to CLC due to the risk of incurring inconsistent obligations based on JSU's claimed ownership of the trademarks. And, the prejudicial effect on JSU, as the absent party, is that it cannot defend its claim to ownership of "Thee I Love" if it is not a party to this proceeding. In the event the Court declares JSU's trademarks invalid or if the trademarks are rendered unenforceable, JSU would lose all rights in its trademarks despite the fact that it had no opportunity to defend its interests in the litigation. Although CLC and JSU undoubtedly share the same overarching goal of establishing JSU's interests in the subject trademarks, CLC is merely a licensee with limited rights and thus, JSU's addition to the suit is necessary to ensure that its interests are fully and adequately represented

Moreover, "[w]hen a necessary party under Rule 19(a) is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed

20

as one of those interests compelling by themselves." *Sabine Pipe Line, LLC v. A Permanent Easement of 4.25 +/- Acres of Land in Orange Cty., Texas*, 327 F.R.D. 131, 144 (E.D. Tex. 2017) (citing *Enable Okla. Intrastate Transmission*, *LLC*, 2016 WL 4402061, at *5 (W.D. Okla. Aug. 18, 2016) (quoting *Enter. Mgmt. Consultants, Inc. v. U.S. ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989)).  Accordingly, sufficient weight must be given to the prejudice to JSU, which cannot be made a party to this suit based on sovereign immunity.  *See A123 Systems, Inc.*, 626 F.3d at 1221 (citing *Republic of Philippines v. Pimentel*, 553 U.S. 851, 866-69 (2008) (holding that the lower courts erred in their analysis of Rule 19(b)'s first factor by "not accord[ing] proper weight to the compelling claim of sovereign immunity").

Second, there is no manner in which to lessen the above referenced prejudices.  Simply put, it would be impossible to tailor any judgment to protect JSU's sovereign immunity rights, because the prosecution of the action itself violates that right.  *See Sabine Pipe Line, LLC*, 327 F.R.D. at 144–45.

Third, a judgment rendered in JSU's absence would be inadequate.  Given that CLC is a licensee with limited rights, JSU may be able to assert defenses and/or claims against Plaintiffs that CLC cannot, thus creating a substantial risk of inconsistent relief.[44]

Lastly, Plaintiffs are not without some recourse if the action were dismissed for nonjoinder.  Plaintiffs could, for instance, challenge JSU's applications for THEE I LOVE at the United States Patent and Trademark Office.  *Even if* no alternative forum exists for the instant claims, courts have routinely held that sovereign immunity "can justify dismissal for inability to

---

[44] *See e.g.*, *A123 Sys., Inc.*, 626 F.3d at 1222 ("Because HQ is a field-of-use licensee and UT has retained non-overlapping rights in the patents in suit, UT may very well be able to assert infringement claims against A123 that HQ cannot, creating the risk of multiple lawsuits and of inconsistent relief.").

join an indispensable party, despite the fact that no alternative forum is available." *Delano Farms Co. v. California Table Grape Comm'n*, 623 F. Supp. 2d 1144, 1170 (E.D. Cal. 2009).

The relief requested by the Defendants in this case follows a worn path of dismissal blazed by another college in the protection of its trademark rights: the University of Florida (the "University"). In *Incentive Marketing Inc. d/b/a The Gator Shop v. Fanatics Retail Group South, Inc.*, Case No. 01-2014-CA03387, 8th Judicial Circuit of Florida in and for Alachua County, the plaintiff attempted to sue the University Athletic Association, Inc. ("UAA") — the athletic department of the University and owner/licensor of the University's trademarks; as well as Fanatics Retail Group South, Inc. ("Fanatics") — licensee of the University's trademarks — over their use of THE GATOR SHOP for an online store for the University. The plaintiff argued that it was the true owner of THE GATOR SHOP, even going to far as to attempt to obtain a federal trademark registration. The court dismissed the plaintiff's claims against UAA, holding that UAA was entitled to sovereign immunity as an instrumentality of the state of Florida. The court also dismissed the plaintiff's claims against Fanatics, finding that the case could not proceed without UAA, an indispensable party to the case, because the case centered around the plaintiff's claim of trademark rights held by the University.[45]   The same result should follow here, and for all the reasons more fully explained herein under the Federal Rules of Civil Procedure.

---

[45] *See* Order Granting Defendants' Motion to Dismiss, in *Incentive Marketing Inc. d/b/a The Gator Shop v. Fanatics Retails Group South, Inc.*, Case No. 01-2014-CA03387, 8th Judicial Circuit of Florida in and for Alachua County, attached as Exhibit "7."

**IV.    Conclusion**

JSU is indispensable to the resolution of this action and cannot be joined because it enjoys sovereign immunity from trademark infringement claims. Because JSU cannot be joined, this Court must dismiss Plaintiffs' claims under Rule 19. Accordingly, and for all the foregoing reasons, this Court should grant CLC's Motion to Dismiss the claims against it and dismiss it from this proceeding.

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

By: ___*/s/ Camalla Kimbrough Guyton*___
       KENT A. LAMBERT (#22468)
       BENJAMIN W. JANKE (#31796)
       CAMALLA K. GUYTON (#33922)
       201 St. Charles Avenue, Suite 3600
       New Orleans, LA  70170
       Telephone: (504) 566-5200
       Facsimile: (504) 636-4000

**ATTORNEYS FOR DEFENDANT,
COLLEGIATE LICENSING COMPANY, LLC**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 8th day of June, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  I have also served the following parties by placing a copy of same in the United States Mail, first-class postage prepaid and addressed to their regular mailing address: none.

_/s/ Camalla Kimbrough Guyton_
CAMALLA KIMBROUGH GUYTON
