UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PAIGE LEE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 20-839** |
| **LEARFIELD COMMUNICATIONS, LLC, ET AL.** | **SECTION I** |

## ORDER & REASONS

Before the Court are two motions to dismiss—the first[1] filed by defendant Collegiate Licensing Company, LLC ("Collegiate"), and the second motion[2] filed by defendant Thaddeus Reed ("Reed") (collectively, "defendants"). Both motions move for dismissal of plaintiffs' Paige Lee, Business Moves Consulting, Inc. ("Business Moves"), Brandmixer, Inc. ("Brandmixer"), and Curtis Bordenave ("Bordenave" and collectively, "plaintiffs") claims, pursuant to Rules 12(b)(1) and 12(b)(7) of the Federal Rules of Civil Procedure. Plaintiffs oppose[3] the motion. For the following reasons, the motions are granted.

I.

Plaintiffs allege that defendants are infringing on plaintiffs' rights to the name and registered trademark, "THEEILOVE,"[4] which was approved by the USPTO on

---

[1] R. Doc. No. 14. Collegiate was incorrectly identified in the complaint as Learfield Communications, LLC. *See* R. Doc. No. 1.
[2] R. Doc. No. 16.
[3] R. Doc. No. 31.
[4] R. Doc. No. 1. Plaintiffs state that on November 2, 2017, Business Moves filed an application bearing serial number 876702210 for the word mark "THEEILOVE" with the United States Patent and Trademark Office ("USPTO"), bearing registration

June 19, 2018.[5] Plaintiffs state that, in violation of this trademark, defendants "advertised, marketed, sold and/or distributed merchandise, and/or participated in the advertising, marketing, sale and/or distribution of merchandise," that, according to plaintiffs, not only "improperly" bore the name and mark, "THEEILOVE," but also "improperly and deceptively" bore the ® designation.[6] Consequently, plaintiffs asserted seven claims against defendants: (1) federal trademark infringement pursuant to 15 U.S.C. § 1114(1);[7] (2) federal unfair competition pursuant to 15 U.S.C. § 1125(a);[8] (3) unfair competition pursuant to unspecified state laws of Louisiana, Texas, Mississippi, Tennessee, and Georgia;[9] (4) violation of unspecified deceptive and unfair trade practices acts and false advertising laws of those same states;[10] (5) commercial defamation;[11] (6) conspiracy, pursuant to unspecified state and federal laws;[12] and (7) a claim for judgment of non-infringement.[13]

---

number 5496751. Plaintiffs claim that as a result, they possess a complete, perfected and approved federal registration in the word mark. R. Doc. No. 1, at 6 ¶ 23. Plaintiffs also state that on November 26, 2019, Business Moves and Brandmixer filed an application, which is currently pending and has a serial number of 88707020, for the "THEEILOVE" word mark for various other goods and services. R. Doc. No. 1, at 7.
[5] R. Doc. No. 1, at 1 ¶ 2; *see also* R. Doc. No. 5.
[6] R. Doc. No. 1, at 7 ¶ 4, ¶ 25.
[7] *Id.* at 9 ¶¶ 33–38.
[8] *Id.* at 10 ¶¶ 39–46.
[9] *Id.* at 12 ¶¶ 47–52.
[10] *Id.* at 12 ¶¶ 53–59.
[11] *Id.* at 13 ¶¶ 60–64.
[12] *Id.* at ¶¶ 65–66.
[13] *Id.* at 14 ¶¶ 66–68.

2

Defendants cast this lawsuit as being "about who owns the trademark rights to 'Thee I Love.'"[14] Defendants assert that the phrase has been the alma mater for Jackson State University ("JSU"), which is not a party to the case.[15] Defendants state that through JSU's use of "THEE I LOVE" since the 1940s,[16] the university has obtained common law trademark rights, pursuant to the Lanham Act, 15 USC § 1125, and Mississippi law,[17] as well as registered trademark rights, pursuant to Mississippi state law.[18] In connection with the federal trademark that plaintiffs seek to defend through this lawsuit, defendants state that "JSU is in the process of petitioning to cancel plaintiffs' U.S. Registration for THEEILOVE! (& design)" and that "[i]n due course, JSU plans to oppose the registration of the pending application for THEE I LOVE, U.S. Ser. No. 88/707,020 if and when a notice of allowance is issued and defend its various pending applications for THEE I LOVE[.]"[19]

---

[14] R. Doc. No. 14-1, at 7.  Reed's motion adopts Collegiate's memorandum and supporting documents.  *See* R. Doc. No. 16-1, at 2.
[15] *See* R. Doc. No. 1 (naming defendants and not naming JSU).
[16] R. Doc. No. 14-1, at 7.  The phrase, according to defendants, is also incorporated into JSU's fight song.  *Id.*  *See also* R. Doc. No. 14-3, at 2–3 ¶¶ 7–12 (declaration of Kamesha Hill).
[17] *See id.* at 8 n.5 (citing Miss. Code Ann. § 75-25-31, which states: "Nothing herein shall adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law.").
[18] *Id.* at 8.  *See also* R. Doc. No. 37, at 3 n.3 ("[JSU] has filed a number of trademark applications for one or more formative versions of THEE I LOVE, including THEE I LOVE, Mississippi Trademark Registration No. 15767, registered 9/22/2015; Thee I Love, Mississippi Registration No. 15580, registered 11/14/2019; HAIL HAIL TO THEE, U.S. Reg. No. 6,050,006; THEE I LOVE! (and design), U.S. Ser. No. 88/730,067 (application pending), and THEE I LOVE, U.S. Ser. No. 88/728,596 (application pending).").
[19] R. Doc. No. 14-1, at 15.

Plaintiffs acknowledge that "JSU does own two Mississippi trademarks[]"—one for use "on license plates and in its alma mater[,]" and the other for use on t-shirts.[20] However, plaintiffs maintain that, in the instant matter, "there's no assault on any marks JSU claims to own."[21]

Defendants further assert that their connection to the phrase "THEE I LOVE" is through JSU.[22] Specifically, Collegiate states that it has a contract with JSU to act as an agent for the university in granting licenses for various designs, trademarks, and service marks, including the trademark "Thee I Love."[23] Collegiate argues that, because it "does not even select JSU's licensees and does not itself own the mark," it "has less than all substantial rights" in the relevant designs, trademarks, and service marks.[24] Reed, similarly is, according to the complaint, a "licensed vendor of Jackson State University,"[25] and it assumes Collegiate's arguments on this point.

---

[20] R. Doc. No. 31, at 8 (citations omitted).
[21] *Id.* at 2.
[22] R. Doc. No. 14-1, at 2.
[23] R. Doc. No. 37, at 4. Specifically, Collegiate avers that it "is neither a licensor with complete rights (akin to an assignment of the owner's rights) to the mark nor is it a licensee (with rights of use) of the mark. JSU granted [Collegiate] the exclusive right to act as an ***agent*** for JSU in the ***granting of licenses*** to licensees to use JSU's Indicia on merchandise. In other words, [Collegiate] merely assists JSU in its decision of who may license the trademark. [Collegiate] does not even select JSU's licensees and does not itself own the mark – *i.e.,* it has **less than all substantial rights** in the Indicia." *Id.* (emphasis in original).
[24] *Id.*
[25] R. Doc. No. 1, at 4 ¶ 14.

4

Accordingly, defendants argue that JSU's absence from this lawsuit and inability to be joined requires that the case be dismissed.[26] Specifically, defendants argue that plaintiffs failed to name JSU as a defendant; that "as owner of the trademark [plaintiffs] claim to own, [JSU] is an indispensable party to the litigation[;]"[27] and that, because JSU—"an arm of the State of Mississippi"—"enjoys sovereign immunity under the Eleventh Amendment" and so cannot be joined without stripping the Court of subject matter jurisdiction, the claims against Collegiate and Reed "fail as a matter of law" and must be dismissed.[28]

Additionally, defendants claim that plaintiffs Bordenave and Business Moves are "trademark pirates,"[29] stating that this "assault upon JSU's trademark is but the latest example of a long-running pattern of abusive conduct, whereby Mr. Bordenave

---

[26] R. Doc. No. 14, at 1–2.
[27] *Id.* at 1. The Court notes that Rule 19 "no longer uses the terms 'indispensable'" or "necessary party[;]" "the "more modern term is 'required party.'" *Gensetix, Inc. v. Bd. of Regents of Univ. of Texas Sys.*, 966 F.3d 1316, 1320 (Fed. Cir. 2020) (observing that "[t]hese changes were intended to be stylistic only"); *see also* Fed. R. Civ. P. 19 advisory committee's note to 2007 amendment; *Republic of the Phil. v. Pimentel*, 553 U.S. 851, 855–56, 863 (2008) ("though the text has changed, the new Rule 19 has the same design"). The Court will use this "modern" terminology.
[28] *Id.* at 1–2; R. Doc. No. 16-1, at 1–2.
[29] *See* R. Doc. No. 14-1, at 15–18. Specifically, defendants allege that these plaintiffs "have long standing reputations of being trademark pirates whose main business is appropriating and exploiting well-known brands and applying for trademark registrations that they have no connection to whatsoever, as is the case with "THEEILOVE." *Id.* at 15. Defendants cite as an example *Jazzland, Inc. v. Bordenave,* No. 98-1356 1999 WL 243820 (E.D. La. Apr. 22, 1999) (Africk, Magistrate J.). R. Doc. No. 14-1, at 9–10. Plaintiffs counter that Collegiate possesses a reputation as a "bully." R. Doc. No. 31, at 10. The Court notes, but will not consider, these allegations in resolving the instant motions; "reputations" do not necessarily reflect truth, nor do these other matters have direct bearing on the instant motions before the Court.

seeks to register trademarks to which he has no prior connection in the hope of converting or holding for ransom goodwill created through the efforts, traditions, and creativity of others."[30]

The Court will first address whether JSU must be joined to this litigation pursuant to Rule 12(b)(7).  If JSU must be joined, pursuant to Rule 19(a), the Court will then determine whether sovereign immunity interferes with joinder.  If sovereign immunity does interfere with joinder, the Court will decide whether the case can nevertheless proceed absent JSU, pursuant to Rule 19(b), or whether, because that required party must be joined, pursuant to Rule 12(b)(7), the Court lacks subject matter jurisdiction, pursuant to Rule 12(b)(1).

## II.

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action if a court lacks jurisdiction over the subject matter of the plaintiff's claim.  F. R. Civ. P. 12(b)(1).  A case is properly dismissed pursuant to Rule 12(b)(1) "for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998).

Rule 12(b)(1) allows a party to challenge a court's subject matter jurisdiction based upon the allegations on the face of the complaint.  *See Barrera-Montenegro v.*

---

[30] R. Doc. No. 14-1, at 9.

*United States*, 74 F.3d 657, 659 (5th Cir. 1996); *see also Lopez v. City of Dallas*, No. 03-2223, 2006 WL 1450420, at *2 (N.D. Tex. May 24, 2006). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

When applying Rule 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010); *see also Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *Barrera-Montenegro*, 74 F.3d at 659. When examining a factual challenge to subject matter jurisdiction that does not implicate the merits of plaintiff's cause of action, a district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012); *see also Berry v. NLRB*, No. 15-6490, 2016 WL 1571994, at *2 (E.D. La. Apr. 19, 2016) (Morgan, J.) ("The standard of Rule 12(b)(1), 'while similar to the standard of Rule 12(b)(6), permits the court to consider a broader range of materials in resolving the motion.'") (citation omitted).

The party asserting jurisdiction carries the burden of proof when facing a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming*, 281 F.3d at 161); *see also Hozenthal v. Balboa*

*Ins. Co.*, No. 07-4644, 2008 WL 11357735, at *2 (E.D. La. July 15, 2008) (Africk, J.) (quoting *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).

Matter outside the complaint forms the basis of the instant motions to dismiss for lack of subject matter jurisdiction. Accordingly, the Court will look outside the four-corners of the complaint to assure itself of its power to hear the case.

## B. Rule 12(b)(7)

Rule 12(b)(7) of the Federal Rules of Civil Procedure provides for the dismissal of claims when a plaintiff fails to join a required party to the lawsuit pursuant to Rule 19 of the Federal Rules of Civil Procedure. To determine whether to dismiss an action for failure to join a required party, a court must first determine, pursuant to Rule 19(a), whether a party must be joined. Rule 19(a) provides that a party must be joined where:

> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
> > **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

F. R. Civ. P. 19(a).

The initial burden of proof for the party advocating joinder only requires a showing of "the possibility that an unjoined party is arguably indispensable," *Boles v. Greeneville Hous. Auth.*, 468 F.2d 476, 478 (6th Cir. 1972), and when "an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden

8

of disputing this initial appraisal falls on the party who opposes joinder." *See Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986) (citing *Boles*, 468 F.2d at 478).

If Rule 19(a) calls for joinder, then a court must next determine whether "in equity and good conscience," F. R. Civ. P. 19(b), the lawsuit can proceed without the party, or whether the party is required. *See Pulitzer*, 784 F.2d at 1309 ("if joinder is called for, then Rule 19(b) guides the court in deciding whether the suit should be dismissed if that person cannot be joined."). Rule 19(b) directs that a court should "consider" in its analysis:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping the relief; or
>     (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

F. R. Civ. P. 19(b). No single factor is dispositive. *See Gensetix*, 966 F.3d at 1326 (finding that "the district court abused its discretion in giving overwhelming weight to UT's sovereign status to the exclusion of all other facts"). Resolving whether a party is required is a practical inquiry, with an emphasis on pragmatism, whereby the various harms that the parties and the absentees might suffer are considered. *Id.*; *see also Shell W. E & P Inc. v. Dupont*, No. 92-1067, 1993 WL 491708, at *85 (M.D. La. 1993) (citing *Bethel v. Peace*, 441 F.2d 295, 296 (5th Cir. 1971)).

Where Rule 19(b) requires dismissal, a court must dismiss the case pursuant to Rule 12(b)(7).

### III.

Defendants state that "JSU, as an owner of the trademark which [plaintiffs] claim to own, is an indispensable party to this litigation."[31] Defendants argue that JSU is an "indispensable party" to the case because it holds common law and Mississippi state trademarks for the phrase at issue,[32] and because "[i]t is fairly obvious that where the owner is left without the opportunity to defend its ownership, it could experience a loss of rights[.]"[33] *See St. James v. NewPrague Area Cmty. Ctr.*, No. 06-1472, 2006 WL 2069197, at *2 (D. Minn. July 26, 2006) (noting that it is "well established, in suits for . . . trademark infringement, that the owner of the . . . trademark is subject to compulsory joinder") (citations omitted).

Plaintiffs counter that JSU need not be a party because "potential *defendant*-licensors aren't Rule 19(a) 'required parties' and . . . trademark infringement plaintiffs can sue or not sue infringers (joint tortfeasors, legally) as they see fit."[34] Plaintiffs conclude that "forcing infringement plaintiffs to sue every possible infringer cannot be the purpose of Rule 19(a)."[35] For support, plaintiffs cite a legal treatise

---

[31] R. Doc. No. 16-1, at 1–2.
[32] R. Doc. No. 14-1, at 8.
[33] R. Doc. No. 37, at 7.
[34] R. Doc. No. 31, at 23.
[35] *Id.* at 13–14.

10

stating that "there is very little authority regarding who must be joined in trademark-infringement suits."[36]

In response, defendants note that the "tort law maxim" that defendants who are jointly and severally liable may be joined "at plaintiff's discretion" would indicate that plaintiffs need not join "all infringers" to a tort lawsuit. However, according to defendants, that general rule fails to consider "particular distinctions among 'infringers,' such as a trademark *owner* and trademark *licensee*," a relevant distinction between defendants and JSU.[37] It would be inappropriate to treat all alleged "infringers" alike, according to defendants, when not all alleged infringers have the same interests. "[T]he owner, if not joined, is likely to experience significant impairment to its interests."[38] Defendants argue that, while plaintiffs may select their choice of parties, Rule 19 "requires a balancing of the plaintiffs' prerogative in choosing who to sue and the necessity of joining a party the plaintiff *failed* to sue in a particular case."[39]

The Court agrees with defendants that, pursuant to Rule 19(a), JSU must be joined. Defendants are correct that JSU's possession of "an interest relating to the

---

[36] *Id.* at 9 (quoting Mary Kay Kane, 7 Fed. Prac. & Prov. Civ. § 1614 (3d ed. April 2020 update). Plaintiffs also assert that the cases defendants cite for the proposition that JSU must be joined are "inapposite" because they concern trademarks lawsuits in different postures. R. Doc. No. 31, at 1.
[37] R. Doc. No. 37, at 4–6 (emphasis in original).
[38] *Id.* at 5. *See also id.* (noting that defendants' "position would not ultimately force Plaintiffs to sue every *infringer*, but only to include a single party – the trademark *owner* – and for good reason.").
[39] *Id.* (citing *Lisseveld v. Marcus*, No. 96-336, 1997 WL 366053, 693 (M.D. Fla. 1997), *aff'd sub nom. Enviro Response v. Marcus*, 268 F.3d 1066 (11th Cir. 2001)).

11

subject of the action may as a practical matter impair or impede the person's ability to protect the interest." F. R. Civ. P. 19(a)(1)(B)(i). JSU claims a trademark owner's interest in the phrase "Thee I Love," and engaging the merits of plaintiffs' complaint absent JSU's participation in the case would, as a practical matter, hinder JSU's ability to protect its interest. This is particularly true in light of the ongoing petition process between JSU and plaintiffs over the trademark.[40]

Therefore, the Court will evaluate whether sovereign immunity bars joinder, and, if so, whether the case can proceed in JSU's absence pursuant to Rule 19(b) or, whether instead, the case must be dismissed, pursuant to Rule 12(b)(7) and/or Rule 12(b)(1).

### III.

"The Eleventh Amendment bars citizens of a state from suing their own state or another state in federal court unless the state has waived its sovereign immunity or Congress has expressly abrogated it." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (internal citations omitted). "[E]leventh amendment immunity is a jurisdictional issue that cannot be ignored, for a meritorious claim to that immunity deprives the court of subject matter jurisdiction of the action." *Jefferson v. Louisiana State Supreme Court*, 46 F.App'x 732, 732 (5th Cir. 2002).[41] *See also Arce v. Louisiana*, No. 16-14003, 2017 WL 5619376, at *4 (E.D. La. Nov. 21, 2017) (Africk,

---

[40] R. Doc. No. 14-1, at 14–15.
[41] The exceptions to sovereign immunity are inapposite, as immunity has not been waived, nor has the immunity been undermined by abrogation or consent. *See Hughes v. Johnson*, No. 15-7165, 2016 WL 6124211, at *4 (E.D. La. Oct. 20, 2016) (Vance, J.).

12

J.) ("Sovereign immunity operates as 'a constitutional limitation on the federal judicial power.'") (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)).

Rule 19(a) demands that JSU be joined; but sovereign immunity precludes joinder.[42] JSU, as an arm of the State of Mississippi, enjoys the benefits of Mississippi's Eleventh Amendment protection. *See Whiting v. Jackson State University*, 616 F.2d 116, 127 n.8 (5th Cir. 1980) (finding that "JSU is an agency of the state because it is a state-created political body, Miss. Code Ann. § 37–125–1 (Cum. Supp. 1979), and receives state funding."). JSU cannot be joined without depriving of the Court of subject matter jurisdiction. Therefore, the Court must determine whether this lawsuit may nevertheless proceed, absent JSU.

## IV.

The question becomes whether, pursuant to Rule 19(b), the Court may proceed without joining JSU or whether "equity and good conscience" mandate dismissal. F. R. Civ. P. 19(b).

Plaintiffs claim that JSU need not be a party to this lawsuit because its absence based on sovereign immunity "won't prevent Collegiate] from representing its interests[.]"[43] In support of this argument, plaintiffs rely on *Gensetix*, which plaintiffs

---

[42] Plaintiffs argue that the motions to dismiss "can't be analyzed under Rule 12(b)(1) because federal subject matter jurisdiction isn't affected by the Eleventh Amendment," R. Doc. No. 31, at 7, claiming that "the discretion courts exercise when the Eleventh Amendment intersects with Rule 19 means the Constitutional limitations at play are prudential; they're not jurisdictional." *Id.* at 8. Plaintiff's contention is incorrect. *See Jefferson*, 46 F.App'x. at 732.
[43] R. Doc. No. 31, at 2.

state counsels that the named defendants in this case could "adequately represent" JSU's interest.⁴⁴ Plaintiffs also argue that "sovereign immunity alone isn't a compelling enough Rule 19(b) reason to dismiss a case where a licensee can adequately defend the licensor's interests."⁴⁵ Moreover, plaintiffs argue that "a judgment rendered in [JSU's] absence would be adequate" because "JSU faces no invalidation of the questionable "trademarks" it "licensed" to [Collegiate]"; the claim is based on "*plaintiffs* registered and pending federal marks," not any that may belong to JSU; and "there's no evidence that JSU can or would defend where [Collegiate] cannot."⁴⁶ Plaintiffs explain that Collegiate "is being sued because it infringed on the plaintiffs' marks – whether JSU continues to use its marks is not the point of the suit."⁴⁷

Defendants counter that *Gensetix* is distinguishable and that defendants cannot adequately represent JSU's interest because "the interests are not coextensive." As such, defendants argue that JSU's interests would not be adequately represented by defendants.⁴⁸ Defendants reason that Collegiate "does *not* have 'substantially all interests' of the owner" and, therefore, "the licensee does not adequately represent the absent owner's interests."⁴⁹ Additionally, defendants argue that, for practical reasons, "[t]he absence of JSU . . . impairs" the defendants' ability

---

⁴⁴ *Id.* at 1–2.
⁴⁵ *Id.* at 23.
⁴⁶ *Id.* at 22 (emphasis in original).
⁴⁷ *Id.* at 12.
⁴⁸ *Id.*
⁴⁹ R. Doc. No. 37, at 6.

to defend themselves, as such a defense would require "proof of use in commerce among other particular facts and information belonging to JSU," and that defendants have "no way of even trying to present on behalf of JSU without JSU's presence to defend itself."[50]

In the Fifth Circuit, "[d]etermining whether [a lawsuit should be dismissed in the absence of a required party] is a highly-practical, fact-based endeavor." *Gensetix*, 966 F.3d at 1324 (citing *Hood v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009)). In *Gensetix*, the Federal Circuit permitted a patent challenge to proceed under Rule 19(b) without sovereign patent owner University of Texas, reasoning that the patent licensees' interests were sufficiently aligned with the patent owners' to be able to adequately represent its interest. *Id.*

The Court concludes that all four Rule 19(b) factors favor finding JSU to be a required party. As to the first factor, "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties," F. R. Civ. P. 19(b)(1), the Court finds that both JSU and Collegiate would be prejudiced by JSU's absence. Though plaintiffs insist that the case is about their federal trademark, not about JSU's state or alleged common law trademark to Thee I Love, those marks are not so clearly distinguished. For example, in their complaint, plaintiffs explicitly complain about the "sale, distribution and dissemination of license plates, attached to vehicles which move throughout the country, including Louisiana . . ." that bear

---

[50] *Id.*

15

the phrase "Thee I Love."[51]  But JSU owns a Mississippi trademark for use of the phrase "Thee I Love" on license plates, as plaintiffs ultimately conceded in their opposition to the motions to dismiss.[52]  As evidenced by this assertion in the complaint itself, JSU's interests as owner are implicated by this lawsuit, and JSU would be prejudiced if absent from it.

The second factor, "the extent to which any prejudice could be lessened or avoided by" either "protective provisions in the judgment; shaping the relief; or other measures," also tilts toward finding JSU to be a required party.  JSU's interest in the lawsuit is implicated not only by potential judgment or the form of relief, but by the necessary inquiry into ownership of the trademark itself.

The third factor, "whether a judgment rendered in the person's absence would be adequate," favors including JSU.  The Court is persuaded by the distinctions that defendants identify between *Gensetix* and the instant case.  Unlike in *Gensetix*, the interests between JSU and its licensees are not "identical[,]" *see* 966 F.3d at 1326; the Court cannot presume the licensees fully stand in JSU's shoes.[53]  *See A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1216 (Fed. Cir. 2010) (affirming the district court's finding that, in a patent infringement case, where the patent owner had "grant[ed] only a field-of-use license," the patent owner "had transferred less than all substantial rights in the patents in suit to [licensee], thereby making [the patent owner] a necessary party" to the lawsuit).

---

[51] R. Doc. No. 1, at 5.
[52] R. Doc. No. 31, at 8 (citing R. Doc. 14-3, at 59–60).
[53] *See* R. Doc. No 37, at 6.

16

Finally, the fourth factor, "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder," also favors including JSU. Unlike in *Gensetix*, where plaintiff was "without recourse to assert its patent rights because UT cannot be feasibly joined[,]" 966 F.3d at 1326, plaintiffs in the instant case would not be fully without recourse if the instant case were dismissed. Rather, as defendants suggest, plaintiffs could challenge "JSU's applications for THEE I LOVE at the United States Patent and Trademark Office."[54]

The Court concludes that after reviewing each of the Rule 19(b) factors, in "equity and good conscience," the case cannot proceed absent JSU. Therefore, the Court finds JSU to be a required party to this lawsuit.

Because JSU is a required party who must be joined, but whose joinder would divest this Court of subject matter jurisdiction, plaintiffs' claims against defendants must be dismissed pursuant to Rule 12(b)(7).

The Court declines to reach the Rule 12(b)(1) analysis, as the inquiry pursuant to Rule 12(b)(7) fully resolves the motions before the Court. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (noting "that a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits" and holding that a district court may dispose of a case on any proper nonmerits ground—including nonjurisdictional grounds—before establishing its subject matter jurisdiction) (citations omitted); *cf. Fla. Wildlife Fed'n Inc. v. United States Army Corps of Engineers*, 859 F.3d 1306, 1321 (11th Cir. 2017) (Tjoflat, J.,

---

[54] R. Doc. No. 14-1, at 27.

concurring) (asserting that the district court exceeded its discretion by "declining to rule on a nonjurisdictional ground (the [ ] Rule 19(b) failure-to-join ground) in favor of a jurisdictional basis (the [ ] Rule 12(b)(1) sovereign-immunity ground)").

V.

Accordingly,

**IT IS ORDERED** that, pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure, Collegiate's and Reed's motions to dismiss are **GRANTED** and that the claims against Collegiate and Reed in the above-captioned case are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, September 15, 2020.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**